UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Andre Saunders,　　　　　　　　　　　　NO. 19-cv-1551 (SRN/DTS)

　　　　Petitioner,

v.　　　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**

Warden, FCI-Sandstone,

　　　　Respondent.

---

Andre Saunders, FCI-Sandstone, P.O. Box 1000, Sandstone, Minnesota 55072, *pro se* Petitioner

Chad A. Blumenfield, Assistant U.S. Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Respondent

---

## INTRODUCTION

Petitioner Andre Saunders, currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota, seeks a Writ of Habeas Corpus reinstating 41 days of good conduct time he lost following a disciplinary hearing held at the Federal Correctional Institution in Morgantown, West Virginia. Saunders contends that he was unconstitutionally deprived of the good conduct time because the Disciplinary Hearing Officer lacked even some evidence to support his conclusion that Saunders possessed a cellphone in violation of prison rules. Upon review, the Court is satisfied that the DHO based his decision upon sufficient evidence to clear the low threshold applicable to prison disciplinary proceedings.

## FINDINGS OF FACT

In January 2018, a cellphone was discovered under a broom at FCI-Morgantown. Decl. of Michael Gyurke Jr. Ex. D, at 4,[1] Dkt. No. 11. Subsequent forensic analysis of the phone revealed a series of outgoing messages. *Id.* at 7. One message was sent to a phone number associated only with Saunders's prison phone account, although messages were also sent to other phone numbers. *Id.* at 1, 7-8. Based upon this connection, Saunders was charged with possessing a cellphone, which the BOP considers a hazardous tool. *Id.* at Ex. D, at 1; Ex. A, at 44. Saunders received a copy of the incident report and was advised of his rights during the disciplinary process. *Id.* at Ex. D, at 1-2. He made no statement at that time. *Id.* at 2.

The next day, the Unit Disciplinary Committee conducted an initial review of the charge.[2] *Id.* During this hearing, Saunders stated that he "never possess [sic] a cell phone." *Id.* at 1. Because of the nature of the charge, the Committee referred the report to a Discipline Hearing Officer.[3] *Id.* at Ex. D, at 1; Ex. A, at 23, 44. Saunders received and signed a form explaining his rights during the DHO hearing. *Id.* at Ex. E. He indicated that he did not wish to have a staff representative or call witnesses at the DHO hearing. *Id.* at Ex. F.

The hearing in front of the DHO occurred about three weeks later. Saunders reiterated that he understood his rights and that he had received a copy of the incident report. *Id.* at Ex. G, at 1. When asked about the cellphone, he stated that he "never used or possessed it. That's

---

[1] Exhibit D is a copy of the incident report and supporting documentation. Because the various documents in Exhibit D are separately paginated, any pinpoint citation will be to ECF page number at the top of the page.

[2] A Unit Discipline Committee generally consists of two or more staff members, not significantly involved in the incident or investigation, who review the incident report. The Committee may dispose of certain charges itself, or, depending on the seriousness of the charge, refer the incident report to a Discipline Hearing Officer. Gyurke Jr. Decl. Ex. A, at 23.

[3] A Disciplinary Hearing Officer is an independent officer, trained and certified by the Bureau of Prisons, who conducts hearings for incidents referred by a Unit Discipline Committee. Gyurke Jr. Decl. Ex. A, at 27.

[his] cousins [sic] number and [GT] knows him. [GT] called that number." *Id.* at ¶ 15, Ex. G, at 1. Although Saunders had not previously requested witnesses for his hearing, he asked that GT, another inmate, appear to testify. *Id.* GT was brought to the hearing and testified that he "used the phone to contact this number. [He] didn't know Andre [Saunders] had this guy on his list." *Id.* at Ex. G, at 1.

Considering the testimony at the hearing and the documentary evidence, the DHO concluded that Saunders possessed the cellphone. *Id.* at 2. The DHO was persuaded by the fact that phone number in question appeared only on Saunders's account. *Id.* at 2-3. He considered the testimony of both Saunders and GT, but ultimately found it not credible, concluding that "the greater weight of the evidence" supported the conclusion that Saunders possessed the cellphone. *Id.* As a sanction, the DHO revoked 41 days of Saunders's good conduct time, as well as placing him in disciplinary segregation for 30 days and revoking commissary and phone privileges for six months. *Id.* at 3.

## CONCLUSIONS OF LAW

Saunders raises one ground for habeas relief: the DHO's finding that Saunders possessed the cellphone was not supported by sufficient evidence, thus violating his right to due process in the disciplinary proceedings.[4]

### I.  Standard of Review

As a governmental entity, the Bureau of Prisons may not deprive an individual "of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court

---

[4] In his Petition, Saunders reiterates this ground as an "evidentiary objection." Pet. 7. Although Saunders is correct that the Federal Rules of Evidence apply to habeas proceedings, *Armstrong v. Kemna*, 534 F.3d 857, 867 (8th Cir. 2008), the Rules do not apply to the underlying disciplinary proceedings he asks the Court to review. *See* Fed. R. Evid. 101(a), 1101 (defining the scope of applicability of the Rules of Evidence). Regardless, Saunders's objection confuses authentication of evidence (the cellphone) for admissibility with testimony unrelated (and unnecessary) to authenticating the cellphone.

has recognized a prisoner's statutorily created liberty interest in good conduct time, which may shorten a term of imprisonment. *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). An inmate seeking restoration of good conduct time is effectively contesting the duration of his confinement, and so properly brings such a challenge in a habeas corpus proceeding. *Stone v. Norris*, 230 F.3d 1364 (8th Cir. 2000) (Table) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)). In reviewing the petition, a court must remember that it is "not part of the appellate process for prison disciplinary proceedings[,]" and is not responsible for ensuring that a prison's self-imposed procedures were followed. *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985). Rather, the court's review is circumscribed to constitutional infringements. *Id.*

## II.   Evidentiary Hearing

As an initial matter, the Court finds it unnecessary to hold an evidentiary hearing on Saunders's Petition. "Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition alleges sufficient grounds for release, relevant facts are in dispute, and the [prior adjudicative body] did not hold a full and fair evidentiary hearing," *Toney v. Gammon*, 79 F.3d 693, 697 (8th Cir. 1996) (quotations omitted). However, no hearing is necessary "where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record." *Wallace v. Lockhart*, 701 F.2d 719, 730 (8th Cir. 1983). As explained below, Saunders does not dispute any relevant facts. He merely argues that the DHO drew an impermissible finding from the facts. Accordingly, this Court can review the DHO's decision from the current record and would not be aided by a hearing.

## III.   "Some Evidence" Threshold

Although not entitled to "the full panoply of rights due to a defendant" in a criminal prosecution, *Wolff*, 418 U.S. at 555, an inmate subject to prison disciplinary proceedings is

entitled to certain, limited procedural safeguards. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). One of these rights, and the only one Saunders argues was violated, requires the outcome of the disciplinary proceedings to be supported by "some evidence in the record." *Id.* This is a low hurdle to vault on constitutional review. The standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *Id.* at 455-56. This does not require the court to weigh the evidence or asses witness credibility. *Id.* "Even when there is substantial evidence to the contrary, [a hearing officer] may find a guard's report to be credible and therefore take disciplinary action." *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993).

Here, the DHO based his determination on "some evidence." Staff at FCI-Morgantown found a cellphone. Someone using that cellphone contacted a particular phone number. Saunders was the only inmate at FCI-Morgantown associated with that number through his prison phone account. From these facts, the DHO inferred that Saunders must have contacted the number and so possessed the cellphone. This inference does not preclude the possibility that others possessed the phone as well. Nor, frankly, does it preclude GT's testimony from being entirely truthful. It is, however, "some evidence" that Saunders possessed the phone.

Saunders's argument to the contrary is unavailing. At bottom, he contends the DHO based his decision upon speculation, rather than any real evidence. Pet. 2, 4. But the law has always allowed the use of "indirect" or "circumstantial" evidence from which a fact may be indirectly inferred. *E.g.,* EVIDENCE, Black's Law Dictionary (11th ed. 2019). The DHO did not make the sort of speculation, pulled solely from the ether, that might run afoul of Saunders's due process rights. Rather, the DHO made a rational inference from the facts before him. That a different inference or conclusion could be drawn from the evidence is not for this Court to decide. *Hrbek*, 12 F.3d at 781.

The remainder of Saunders's argument effectively asks this Court to re-weigh the evidence and find that the greater weight of the evidence supports a determination that he did not possess the cellphone. In doing so, Saunders conflates the standard applied by the DHO (the "greater weight of the evidence") with the lower standard this Court must apply ("some evidence"). Saunders also maintains that the DHO discredited both his and GT's testimony for purely speculative reasons. But, again, the Court does not revisit credibility determinations on habeas review. *Hill*, 472 U.S. at 455-56.

In short, the DHO based his determination on "some evidence," even though the evidence was circumstantial and contrary testimony existed. As such, Saunders's due process rights were satisfied, and habeas relief is unwarranted.

## RECOMMENDATION

For the reasons stated on the record, the Court RECOMMENDS THAT Petitioner Andre Saunders's Petition for a Writ of Habeas Corpus [Dkt. No. 1] BE DENIED.

Dated: October 16, 2019　　　　　　　　　s/David T. Schultz_____
　　　　　　　　　　　　　　　　　　　　DAVID T. SCHULTZ
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).